# EXHIBIT D

## Declaration of Special Agent Brent McKnight

I am Coast Guard Investigative Service (CGIS) Special Agent Brent McKnight. I am currently assigned as a CGIS Special Agent at Resident Agent Office in Philadelphia, Pennsylvania. I am a graduate of the Criminal Investigator Training Program held at the Federal Law Enforcement Training Center (FLETC) in Brunswick, GA.

In my capacity as a Special Agent, I have been involved in the investigation of events onboard the vessel M/T Evridiki while in Delaware Bay in 2019. I am familiar with the facts of the investigation, as developed by Coast Guard personnel and crew interviews.

The information contained in this declaration is based upon my participation in the Evridiki investigation, my training and experience, conversations with other law enforcement officers and witnesses, and the review of documents and records. Because this affidavit has been prepared for a limited purpose of providing certain information for the Office of Probation and the Court, I have not summarized the evidence presented at trial or otherwise included every detail of every aspect of the investigation.

1.      As previously summarized in the declaration of Special Agent Steven Frith, the M/T Evridiki was subject to a vetting inspection on behalf of BP shipping on March 27, 2018.

2.      On February 20, 2020, I participated in a telephone interview of Captain John Thomas Mann, a Superintendent for British Petroleum (BP) and BP attorney John Latrobe. This declaration summarizes information provided by Captain Mann during the phone call and documents previously provided by BP.

3.      Captain Mann discussed the BP SIRE (Ship Inspection Report Programme) inspection on March 27, 2018. Captain Mann was not present onboard M/T Evridiki but has reviewed the report. He stated that it was prepared by a BP contract inspector (Captain Dionisis Apostolatos) and reviewed by a BP superintendent (Captain Yannis Papanastasiou). Captain Mann indicated that both had prepared an internal assessment that he had also reviewed.

4.      Captain Mann was asked about an adverse observation noted in the inspection report concerning the PV valves and PVV breaker. Captain Mann stated that the PV valves and PVV breaker are very important safety features of an oil tanker such at the M/T Evridiki. The purpose of the PV valves on various tanks is to provide for pressure release to prevent potentially catastrophic incidents, environmental releases and dangerous conditions that could cause fires and/or hurt crew members. They are tested on both pressure and vacuum set points to ensure that they are working properly and assure structural integrity. The PVV breaker is a backup system in the event a valve fails.

5.      The BP SIRE inspection report for the inspection conducted on March 27, 2018, stated that the PV valves were not in good order. This was one of the reasons for the ship being rejected for use by BP Shipping. In sum and substance, and as explained by Captain Mann, BP questioned the authenticity of a certificate attesting to pressure and vacuum tests because the ship was loaded with crude oil at the time the certificate was issued which would have prevented at least part of the test (the vacuum test) from being performed. The BP contract inspector who noted the deficiency prepared an internal assessment that stated:

1

PVV and PV Breaker test, on 27th Aug 2017 the vessel was loaded with crude oil. The vessel as well as the office representatives (the office people "gave" the job to the shore team) were unable to explain how / what means were used to test the vacuum of the PV Valves as well as of the PV Breaker !

In addition there was no risk assessment and no cold work permits or any other kind of permit for any of these jobs. We also checked the gangway log in order to find out when the technician(s) boarded and disembarked the vessel in order to carry out these jobs. No entries were recorded. The gangway log was reviewed by the ship's Master. In my opinion the certificate was fake, nobody boarded the vessel and nobody tested the PVV and / or the PV Breaker (after all it is impossible to test the vacuum of the PV Breaker on a loaded tanker, in addition testing the PVV settings either by dismantling them or on their actual position whilst the ship is loaded is at least bad practice. For some reason the operators had followed a "strange" path.

Although the overall condition of the vessel was satisfactory and the ship's staff performed satisfactorily too, based on the two observations mentioned above and the operators' "attitude behind these issues" I believe that the ship cannot be deemed as suitable for BP business.

Inspector Confidential Comments (emphasis added) (March 29, 2019) (Attachment 2 to Agent Vachon's Declaration).

6.      Captain Mann explained that the gangway log is a required security protocol and it would be very unusual if the names of those boarding the vessel were not recorded in that log. Accordingly, he indicated that because the vacuum test could not be performed with loaded tanks and because the outside team had not been logged on the gangway log, he had no reason to question the conclusion of the BP inspector that the certificate was fake. He stated it was possible that the individuals could have boarded at an earlier time and been riding with the ship. Captain Mann was further asked whether Liquimar's follow-on response dated March 31, 2018 submitted by Captain E. Apostolou changed BP's opinion. He stated that it did not. Captain Mann stated that the company's submission did not support the claim of the certificate that a vacuum test had been performed. With regard to Liquimar's claim that the outside team was listed on the ship's log, Captain Mann further indicated that when a vessel operator has proof that an observation is incorrect, they usually copy and submit the documents proving their position. He drew an adverse inference that no such documents were submitted by Liquimar to BP.

7.      Captain Mann stated that the apparently false PV test certificate was very significant for two reasons. First, it concerns a very important safety and environmental issue. Second, he stated that fraudulent documents are a major concern in their own right because they call into question all of the other documents used by a vessel to verify compliance.

8.      On February 25, 2020, I participated in a telephone interview with Captain Dionisis Apostolatos who conducted the BP SIRE inspection on board the M/T Evridiki on March 27, 2018. Captain Apostolatos stated that he did not specifically recall the inspection. Having reviewed the audit report and his confidential notes, and because of their significance, he stated that he was sure that the company would have pressed him not to make the observations, or to minimize them. He did not recall any specifics. He said he was also confident that no money or other benefit was offered to him in exchange because that

is the type of thing that he certainly would remember, and that had it occurred he would have reported such to BP as is required.

On this  9  th day of March 2020, I, Brent McKnight, hereby affirm that the above is true and correct to the best of my knowledge.

Brent McKnight, Special Agent
Coast Guard Investigative Service